IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADAM LARA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-1016-E-BN |
| | § | |
| PENHALL COMPANY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Adam Lara filed a *pro se* lawsuit in state court presenting employment-based claims, which Defendant Penhall Company removed based on federal question jurisdiction. *See* Dkt. Nos. 1 & 2.

United States District Judge Ada Brown referred the removed lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Penhall moved to dismiss Lara's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 6 & 7. Lara failed to respond to the motion by the deadline to do so. *See* Dkt. No. 8. But he did move for court-appointed counsel and to compel discovery, requests that the Court denied. *See* Dkt. Nos. 9-11.

And, after the deadline to amend once as a matter of course, *see* FED. R. CIV. P. 15(a)(1), Lara made a filing on July 30, 2024 that could be liberally construed as a motion for leave to amend, *see* Dkt. No. 15.

The undersigned now enters these findings of fact, conclusions of law, and

recommendation that, to the extent and for the reasons set out below, the Court should grant the motion to dismiss, deny the construed motion for leave to amend as futile, and dismiss this lawsuit.

## Legal Standards

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.,*

*Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient."

- 3 -

(cleaned up)).

Applying these general standards to this context – where, liberally construed, Lara brings claims of discrimination and retaliation based on race, national origin, and disability, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act ("ADA"), and Texas law – "the complaint need not contain specific facts establishing a prima facie case of discrimination [or retaliation] under the framework set forth ... in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (cleaned up).

"But a plaintiff is still required to plead sufficient facts *on all of the ultimate elements* of [each] claim." *Id.* (cleaned up; emphasis in original).

And, at this stage, "a plaintiff must plead two 'ultimate elements' in order 'to support a disparate treatment claim ... : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* [a] protected status.'" *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *4 (5th Cir. June 7, 2024) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); emphasis in *Cicalese*).

That is,

> [a] complaint need not allege each prong of the prima facie test for disparate treatment ... ; to support a disparate treatment ... , though, it must plausibly set out facts that the defendant took the adverse employment action against a plaintiff *because of* [a] protected status. [Accordingly, a] plaintiff must allege facts, direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's protected status] or that [the employer] treated similarly situated employees [not of the plaintiff's protected status] more favorably.

*Sanchez v. Chevron N. Am. Exploration & Prod. Co.*, No. 20-30783, 2021 WL 5513509,

at *5 (5th Cir. Nov. 24, 2021) (per curiam) (cleaned up; emphasis in original).

And, while the ultimate elements of a disparate treatment claim under Section 1981 mirror Title VII, "to prevail on a claim that the defendant violated § 1981, 'a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.'" *Blash v. City of Hawkinsville*, 856 F. App'x 259, 264 n.3 (11th Cir. 2021) (per curiam) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citation omitted)); *Ramirez v. Merritt*, No. SA-19-CV-00592-JKP-HJB, 2020 WL 13610413, at *4 (W.D. Tex. May 18, 2020) ("A plaintiff who sues under § 1981 must plead and prove the conduct was a 'but for' cause of his injury; 'while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant.'" (citation omitted)).

"Similarly, for a retaliation claim, a plaintiff only needs to plausibly 'allege facts going to the ultimate elements of the claim to survive a motion to dismiss.'" *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *4 (5th Cir. Oct. 8, 2024) (per curiam) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)).

Those "ultimate elements" are "that 1) [the plaintiff] engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright*, 990 F.3d

at 433 (cleaned up); *see also Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019) (observing, albeit prior to *Comcast*, "that '[r]etaliation claims under § 1981 and Title VII … are parallel causes of action,' which means they 'require[ ] proof of the same elements in order to establish liability'" (quoting *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003); citation omitted)).

This framework, to address Lara's federal claims, applies equally to his claims under Texas law. *See, e.g.*, *McGee v. Hiland Dairy Foods Co. LLC*, No. 3:23-cv-2630-D-BN, 2023 WL 9005639, at *2 (N.D. Tex. Dec. 1, 2023) ("[W]hile McGee also makes claims under Chapter 21 of the Texas Labor Code, '[a] purpose of Chapter 21 is to execute the policies embodied in [Title VII], the [ADEA], and the [ADA].' So federal courts commonly apply the federal statutory 'framework to interpret Chapter 21.'" (quoting *Green v. Costco Wholesale Corp.*, No. 3:15-cv-1868-N, 2017 WL 10110295, at *3 n.2 (N.D. Tex. May 30, 2017))), *rec. adopted*, 2023 WL 9005583 (N.D. Tex. Dec. 28, 2023).

And, "[i]n [all these] context[s], '[a] court … inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.'" *Smith*, 2024 WL 4442040, at *4 (quoting *Cicalese*, 924 F.3d at 767).

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to

amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006),

the Court must do so "unless there is a substantial reason to deny leave to amend,"

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason is futility: "If the complaint, as amended, would be subject to

dismissal, then amendment is futile and the district court [is] within its discretion to

deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir.

2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229

(5th Cir. 2022)).

## Analysis

Penhall persuasively explains that the allegations in the state court petition

itself fail to allege a plausible claim. *See* Dkt. No. 7 at 2-4 (citing Dkt. No. 2 at 4-7).

Still, as Penhall's notice of removal reflects, Lara also attached to that petition

a charge of discrimination filed with the Texas Workforce Commission ("TWC"). *See*

*generally* Dkt. No. 2.

And pleadings in the Rule 12(b)(6) context include attachments to the

complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see*

*also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The

Civil Rules provide that an attachment to a complaint generally becomes 'part of the

pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED.

R. CIV. P. 10(c); citations omitted)).

The charge filed with the TWC indicates claims for discrimination based on

race, national origin, and disability and for retaliation and includes allegations in

support of these claims that are clearer than those in the body of the petition. *See* Dkt. No. 2 at 8-9.

But, even considering these allegations, Lara fails to present facts from which the Court could infer discrimination "because of" race or national origin, in violation of Title VII and Chapter 21, where he offers the mere conclusions (1) that, "[f]rom the beginning of my employment, Penhall treated me disparately as compared to my non-Hispanic/non-Mexican counterparts" and (2) that he "applied for multiple open positions; however, Penhall refused to consider me for the positions out of discriminatory animus" and supports these conclusions just by alleging that, "when I asked Greg (General Manager, Caucasian) if I could rent his house until it was sold, Greg derogatorily responded with 'You can't afford my home,' perpetuating the discriminatory racial stereotype that Hispanic people are poor." Dkt. No. 2 at 8.

Such allegations also fail to meet Section 1981's "but for" standard. *See Chapman v. ADT LLC*, No. 3:22-cv-2188-D-BN, 2023 WL 995345, at *9 (N.D. Tex. Dec. 28, 2023) ("As multiple courts have observed since *Comcast*, a plaintiff's failure to plead a plausible Title VII claim requires dismissal of the related Section 1981 claim." (citation omitted)), *rec. adopted*, 2024 WL 920074 (N.D. Tex. Mar. 4, 2024).

Nor does Lara allege that he participated in an activity protected by any of these laws, such that he has alleged a plausible claim of retaliation based on race or national origin.

But Lara's claims for discrimination and retaliation based on a disability are more developed:

On or around 04/20/2023, I was feeling extreme pain in my lower abdomen. When I went to work to explain to them that I may need the day off and had to return to my car to sit and recover from the pain. The next day, I was still in debilitating pain. I reported to work and requested the reasonable accommodation of the day off to go to the hospital due to my disability. Instead of engaging in the interactive process to reasonably accommodate me, Brad (Operations Manager/Divisional Manager, Caucasian) called me into the office and terminated me without providing a reason for the termination.

This termination was clearly discriminatory and retaliatory. First, Penhall's failure to provide a reason for the termination at the time of termination will be burden shifting. Additionally, the temporal proximity between my disability and request for reasonable accommodations and the sudden termination, combined with the lack of any legitimate reason for termination, the disparate treatment, and the discriminatory comments, demonstrates that Penhall terminated me out of discriminatory and retaliatory animus for my disability, need for reasonable accommodations, and race/national origin.

I proceeded to go directly to the hospital after the discriminatory and retaliatory termination and was immediately taken into surgery to treat my gallbladder condition. The doctor stated that I would be under temporary restrictions to not work and not lift more than 10 pounds for a maximum of six weeks but potentially shorter pending my follow-up appointment. I called Brad after surgery to update him about my disability and provide Penhall with the opportunity to cure its discriminatory and retaliatory conduct and engage in the interactive process. Brad instructed me to call again after I was released from the hospital.

On or around 04/23/2023, when I was released, I called Penhall's office to follow up as instructed and inquire about the insurance coverage for my surgery. Brad answered and gave me the number to call Penhall's Human Resources department. However, when I called Human Resources, they flippantly stated, "We already told you that you don't work here anymore," reiterating the discriminatory and retaliatory termination and refusing to take remedial action or otherwise engage in the interactive process – further demonstrating and ratifying Penhall's discriminatory and retaliatory animus and refusal to provide reasonable accommodations.

Dkt. No. 2 at 8-9.

Under the ADA, "an employer is generally prohibited from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting 42 U.S.C. § 12112(a)).

To plead a plausible claim of ADA discrimination, a plaintiff must provide facts to support "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

> [But t]he Act is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer … either because they are in fact disabled or because their employer mistakenly believes them to be disabled. If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation.

*Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997) (citation omitted); *see also Carpenter v. Wal-Mart Stores, Inc.*, 614 F. Supp. 2d 745, 764 (W.D. La. 2008) ("A medical condition is not necessarily an impairment, and an impairment is not necessarily a substantial limitation on a major life activity so as to be a disability within the meaning of the ADA.").

And, so, "[t]he actual name of a disability is irrelevant; what matters is the

effect of [a] disability on an individual's life." *Anderson v. L. Keeley Corp.*, No. 4:22 CV 710 JMB, 2022 WL 3585596, at *2 (E.D. Mo. Aug. 22, 2022) (citing *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)).

And "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Significantly, "[t]he ADA Amendments Act of 2008 … provides, among other things, that the term 'substantially limits' is to be interpreted as broadly as possible.'" *Milteer v. Navarro Cnty., Tex.*, 652 F. Supp. 3d 754, 763 (N.D. Tex. 2023) (quoting 42 U.S.C. § 12102(4)(A)-(B)); *see also Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 478-81 (5th Cir. 2023) ("tak[ing] the opportunity to acknowledge, as our sister circuits have, that, following the ADAAA's passage, an impairment need not be 'permanent or long-term' to qualify as a disability").

But all Lara has alleged is that, as part of his recovery from a routine surgery, he was advised to "not work and not lift more than 10 pounds for a maximum of six weeks but potentially shorter pending [a] follow-up appointment." Dkt. No. 2 at 9.

And, as courts have held after the passage of the ADAAA, "many short term impairments, such as [a plaintiff's] recovery period for his hernia surgery, still do not qualify as a disability under the revised standard of the ADAAA." *Brodzik v. Contractors Steel, Inc.*, 48 F. Supp. 3d 1183, 1189 (N.D. Ind. 2014) (citations omitted; further observing that, "though episodic impairments are disabling if they

substantially limit a major life activity when active, 42 U.S.C. § 12102(4)(D), there is nothing in Plaintiff's Complaint to suggest that Plaintiff's hernia and the resulting surgery was 'anything more than a one-time occurrence'"); *see also Climer v. Harrah's Entm't, Inc.*, No. 2:12-CV-00047-DMB-JMV, 2014 WL 4692067, at *10 (N.D. Miss. July 23, 2014) ("Even under the more lenient standards of the ADAAA, '[a] temporary condition post-surgery does not qualify as a disability.' *Lee v. Spectranetics Corp.*, No. 12-cv00633, 2013 WL 5416972, at *4 (D. Colo. Sep. 27, 2013); *see also Butler v. BTC Foods Inc.*, No. 12-492, 2012 WL 5315034, at *3 (E.D. Penn. Oct. 19, 2013) (under the ADAAA, 'an employee's inability to work for a period after recovering from surgery does not necessarily support a finding that [he] has a disability')."); *Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475, 483 (N.D. Tex. 2015) (distinguishing *Suggs v. Cent. Oil of Baton Rouge, LLC*, No. 13-25-RLB, 2014 WL 3037213, at *4 (M.D. La. July 3, 2014), where the plaintiff "provided evidence and testimony showing that the condition substantially limited his circulatory function by causing plaque build-up in the artery wall which could eventually lead to blood clots and possible stroke" and, "[a]lthough [that plaintiff's] condition resulted in only a temporary outward manifestation of limitations, the brief recovery period following surgery, the disease itself constituted a continuing disorder of the circulatory system" from its plaintiff, whose "impairment [also] resulted in a temporary outward manifestation of limitations" but who did "not have an underlying disease or condition that substantially limits a major life activity," and, so, "Plaintiff's physical impairment and limitations were both temporary, transitory experiences, that did not result from

an ongoing condition").

And, to the extent that Lara makes a failure-to-accommodate claim under the ADA, the statute

> requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, a plaintiff "must show that (1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."

*Mueck*, 75 F.4th at 485 (citation omitted).

But Lara's failure to adequately allege a disability under the ADA also prevents the Court from finding that this claim is plausibly pleaded.

The ADA further "prohibits an employer from 'discriminating against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA." *Lyons*, 964 F.3d at 303-04 (cleaned up). And the ultimate elements of an unlawful retaliation claim under the ADA are "that: (1) [the plaintiff] engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Id.* at 304 (footnote omitted).

And, again, a failure to adequately allege a disability under the ADA prevents the Court from finding the reasonable belief required to allege that Lara opposed an employment practice that is unlawful under the ADA.

In sum, Lara's complaint fails to allege a plausible claim.

Turning to leave to amend, the undersigned's review of Lara's July 30 filing reveals that it does not cure the deficiencies set out above, so granting leave to amend would be futile.

But the opportunity file objections to these findings, conclusions, and recommendation (as further explained below) allows Lara another opportunity to show that this case should not be dismissed and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

And the Court should dismiss this lawsuit with prejudice if Lara fails to file timely objections that show a basis to amend to allege a plausible claim – that is, one supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Recommendation

The Court should grant the motion to dismiss [Dkt. No 6], and, unless Plaintiff Adam Lara shows through timely objections a basis to amend to allege a plausible claim, the Court should dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 6, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE